UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION


STEVEN WILLIE MONTGOMERY,

                    Petitioner,

vs.                                    Case No. 3:18-cv-227-J-39PDB


SECRETARY, DEPARTMENT
OF CORRECTIONS, et al.,

                    Respondents.

_____


**ORDER**

**I.  INTRODUCTION**

Petitioner, Steven Willie Montgomery, proceeding pro se,
challenges his state court (Duval County) conviction for second
degree murder with a weapon.  In his Petition Under 28 U.S.C. §
2254 for Writ of Habeas Corpus By a Person in State Custody
(Petition) (Doc. 1), he raises fourteen grounds.  Respondents
filed an Answer to Petition for Writ of Habeas Corpus (Response)
(Doc. 16).[1]  Petitioner filed a Reply to Respondents' Response
(Doc. 23).[2]  See Order (Doc. 5).

_____

[1] The Court will hereinafter refer to the Exhibits (Doc. 16) as
"Ex."  The page numbers referenced in this opinion are the Bates
stamp numbers at the bottom of the page of each exhibit or the
page number on the particular document.

[2] With respect to the Petition, Response and Reply, the Court will

## II. EVIDENTIARY HEARING

A habeas petitioner has the burden to establish a need for an evidentiary hearing.  See Chavez v. Sec'y, Fla. Dep't of Corr., 647 F.3d 1057, 1060 (11th Cir. 2011) (opining a petitioner bears the burden of establishing the need for an evidentiary hearing with more than speculative and inconcrete claims of need), cert. denied, 565 U.S. 1120 (2012).  Upon review, the Court can "adequately assess [Petitioner's] claims without further factual development," Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), cert. denied, 541 U.S. 1034 (2004).  Petitioner has not carried his burden and is not entitled to an evidentiary hearing. Schriro v. Landrigan, 550 U.S. 465, 474 (2007).

## III. THE PETITION

The Petition is timely filed.  Response at 7.  Respondents contend the first three grounds of the Petition present state law claims, id. at 19-24, and the AEDPA (The Antiterrorism and Effective Death Penalty Act) deference is applicable to the remaining grounds.

## IV. HABEAS REVIEW

Petitioner claims he is detained "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C.

---

reference the page number assigned by the electronic filing system.

§ 2241(c)(3).  This Court recognizes its authority to award habeas corpus relief to state prisoners "is limited-by both statute and Supreme Court precedent." <u>Knight v. Fla. Dep't of Corr.</u>, 936 F.3d 1322, 1330 (11th Cir. 2019).  The AEDPA governs a state prisoner's federal petition for habeas corpus and "prescribes a deferential framework for evaluating issues previously decided in state court[,]" <u>Sealey v. Warden, Ga. Diagnostic Prison</u>, No. 18-10565, 2020 WL 1527977, at *9 (Mar. 31, 2020) (citation omitted), limiting a federal court's authority to award habeas relief.  <u>See</u> 28 U.S.C. § 2254; <u>Shoop v. Hill</u>, 139 S. Ct. 504, 506 (2019) (per curiam) (recognizing AEDPA imposes "important limitations on the power of federal courts to overturn the judgments of state courts in criminal cases").  As such, federal courts may not grant habeas relief unless one of the claims: "(1)'was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States,' or (2) 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.' 28 U.S.C. § 2254(d)." <u>Nance v. Warden, Ga. Diagnostic Prison</u>, 922 F.3d 1298, 1300-1301 (11th Cir. 2019), <u>cert. denied</u>, No. 19-6918, 2020 WL 1325907 (U.S. Mar. 23, 2020).  <u>See</u> <u>Sealey</u>, 2020 WL 1527977, at *9.

In <u>Knight</u>, the Eleventh Circuit explained:

A decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Williams [v. Taylor, 529 U.S. 362 (2000)] at 413, 120 S. Ct. 1495. A state court decision involves an unreasonable application of federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. To justify issuance of the writ under the "unreasonable application" clause, the state court's application of Supreme Court precedent must be more than just wrong in the eyes of the federal court; it "must be 'objectively unreasonable.'" Virginia v. LeBlanc, --- U.S. ----, 137 S. Ct. 1726, 1728, 198 L.Ed.2d 186 (2017)(quoting Woods v. Donald, --- U.S. ---, 135 S. Ct. 1372, 1376, 191 L.Ed.2d 464 (2015)); see also Bell v. Cone, 535 U.S. 685, 694, 122 S. Ct. 1843, 152 L.Ed.2d 914 (2002) (explaining that "an unreasonable application is different from an incorrect one.").

Knight, 936 F.3d at 1330–31.

To obtain habeas relief, the state court decision must unquestionably conflict with Supreme Court precedent, not dicta. Harrington v. Richter, 562 U.S. 86, 102 (2011). If some fair-minded jurists could agree with the lower court's decision, habeas relief must be denied. Meders v. Warden, Ga. Diagnostic Prison, 911 F.3d 1335, 1351 (11th Cir.), cert. denied, 140 S. Ct. 394 (2019). Therefore, unless the petitioner shows the state-court's

4

ruling was so lacking in justification that there was error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement, there is no entitlement to habeas relief. Burt v. Titlow, 571 U.S. 12, 19-20 (2013).

This Court must accept that a state court's finding of fact, whether a state trial court or appellate court, is entitled to a presumption of correctness under 28 U.S.C. § 2254(e)(1). "The state court's factual determinations are presumed correct, absent clear and convincing evidence to the contrary." Sealey, 2020 WL 1527977, at *9 (quoting 28 U.S.C. § 2254(e)(1)). This presumption of correctness, however, applies only to findings of fact, not mixed determinations of law and fact. Brannan v. GDCP Warden, 541 F. App'x 901, 903-904 (11th Cir. 2013) (per curiam) (recognizing the distinction between a pure question of fact from a mixed question of law and fact), cert. denied, 573 U.S. 906 (2014). Where there has been one reasoned state court judgment rejecting a federal claim followed by an unexplained order upholding that judgement, federal habeas courts employ a "look through" presumption: "the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning." Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018) (Wilson).

Thus, the reviewing federal court's habeas corpus consideration of a petition under AEDPA is a guard against extreme malfunctions in the state criminal justice systems, not a mechanism for ordinary error correction. Richter, 562 U.S. at 102-103 (citation and quotation marks omitted). As noted in Sealey, 2020 WL 1527977, at *9 (citations omitted), when reviewing whether there has been an unreasonable application of federal law, "[t]he key word is 'unreasonable,' which is more than simply incorrect." Consequently, state-court judgments will not easily be set aside due to the applicability of the highly deferential AEDPA standard that is intentionally difficult to meet. See Richter, 562 U.S. at 102. Although a high hurdle, this high standard does not impose a complete bar to issuing a writ, but it severely limits those occasions to those "where there is no possibility fairminded jurists could disagree that the state court's decision conflicts" with Supreme Court precedent. Id.

## V. GROUNDS ONE, TWO, AND THREE

**GROUND ONE: THE TRIAL COURT COMMITTED FUNDAMENTAL ERROR BY FAILING TO APPLY THE LAW OF THE CASE AND IMPOSING UPON PETITIONER THE BURDEN TO PROVE THAT THE KILLING WAS AN ACT OF JUSTIFIABLE HOMICIDE[.]**

Petitioner alleges fundamental error committed by the trial court in its failure to apply the law of the case and by imposing a burden on the defense to prove the killing was an act of justifiable homicide (Doc. 1-1 at 1). Petitioner raised a

comparable claim in Issue I of his counseled initial direct appeal brief following his second jury trial. Ex. PP at i, 17-18. He argued, "[s]ince the jury was instructed that the state bears the burden of proof as to the elements of the offense, the jury may have reasonably assumed[,]" the trial court's self-defense instruction shifted the burden to the defense to prove the defense of self-defense or justifiable use of deadly force. Id. at 18. The record demonstrates the trial court instructed: "[a]n issue in this case is whether the defendant acted in self-defense. It is a defense to the offense with which Steven Montgomery is charged if the death of Tarnesha Ellis resulted from the justifiable use of deadly force." Ex. KK at 494. The court continued its instruction on the Justifiable Use of Deadly Force,

> Deadly force means force likely to cause death or great bodily harm.
>
> The use of deadly force is justifiable only if the defendant reasonably believes that the force is necessary to prevent imminent death or great bodily harm to himself while resisting, one, another's attempt to murder him or, number two, an attempt to commit an aggravated assault upon him or, three, an attempt to commit an aggravated assault upon [or in] any dwelling, residence or vehicle occupied by him.

Id.

On direct appeal, in a counseled brief, Petitioner argued the instructions included an erroneous shifting of the burden of proof

on the disputed *mens rea* element of second degree murder or manslaughter by act. Ex. PP at 23. Although acknowledging state case law holding otherwise, <u>id</u>., Petitioner urged the 1st DCA to find that the law of his case, <u>State v. Montgomery</u>, 39 So. 3d 252 (Fla. 2010), should take precedence over the rule of the court set forth in <u>Elliott v. State</u>, 49 So. 3d 269 (Fla. 1st DCA 2010) (per curiam), <u>rev. denied</u>, 69 So. 3d 277 (Fla. 2011) and <u>Mosansky v. State</u>, 33 So. 3d 756 (Fla. 1st DCA 2010) (per curiam), <u>rev. denied</u>, 46 So. 3d 48 (Fla. 2010), to the extent inconsistent with the law of the case. Ex. PP at 23-24.

The state, in its Answer Brief of Appellee, responded that this issue was waived as the defense accepted the standard jury instruction on justifiable and excusable homicide. Ex. QQ at 14-16. Indeed, the record shows defense counsel, after reviewing the proposed instructions, accepted all of the instructions, stating "they're fine as they are." Ex. KK at 408. Thereafter, the trial court instructed the jury as to the justifiable use of deadly force. <u>Id</u>. at 494.

Also, notably, in its answer brief, the state explained that in Petitioner's case, <u>Montgomery</u>, the 1st DCA addressed the jury instructions on manslaughter by act, not the issue of the operation of the affirmative defense of self-defense. Ex. QQ at 20. Moreover, it was noted that, recently, the 1st DCA had found the

issue raised by Montgomery without merit finding excusable and justifiable homicide are not elements of the offense, but an affirmative defense that in effect, legally excuses the defendant from an act that otherwise would be a criminal offense. Id. at 20-21. As such, the state urged the 1st DCA to find any error in the standard instruction harmless. Id. at 22-23. The First District Court of Appeal (1st DCA) affirmed per curiam. Ex. SS.

In its response to the Petition, the state urges this Court to find Petitioner fails to allege a violation of constitutional dimension, but instead raises a state law claim of fundamental error under Florida law. Response at 20. To the extent Petitioner is claiming the jury instructions amount to fundamental error, he presents an issue of state law. Even if the instructions were erroneous under Florida law, "it is not the province of a federal habeas court to reexamine state-court determination on state-law questions." Estelle v. McGuire, 502 U.S. 62, 67 (1991). Error, if any, did not rise to the level of a due process violation.[3] Moreover, to the extent the 1st DCA addressed the matter, having affirmed without opinion, the court implicitly

---

[3] "Cases in [the United States Supreme Court] have long proceeded on the premise that the Due Process Clause guarantees the fundamental elements of fairness in a criminal trial." Spencer v. State of Tex., 385 U.S. 554, 563-64 (1967).

found no fundamental error under Florida law.  Otherwise, it would have granted Petitioner relief.

Alternatively, Petitioner has not demonstrated the 1st DCA unreasonably applied clearly established federal law, as determined by the Supreme Court of the United States, in denying any due process claim, if one was presented.  Petitioner has not shown the state court's rejection of the claim was contrary to, or an unreasonable application of, clearly established federal law; therefore, AEDPA deference is due to the state court's decision rejecting this claim.  Thus, Petitioner is not entitled to habeas relief.

To the extent a due process claim was raised and addressed, the adjudication of the state appellate court resulted in a decision that involved a reasonable application of clearly established federal law, as determined by the United States Supreme Court.  Therefore, Petitioner is not entitled to relief on this ground because the 1st DCA's decision was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.  Therefore, ground one is due to be denied.

**GROUND TWO: THE TRIAL COURT COMMITTED FUNDAMENTAL ERROR IN INSTRUCTING THE JURY ON "JUSTIFIABLE USE OF DEADLY FORCE: BECAUSE THE INSTRUCTION ERRONEOUSLY IMPOSED A DUTY TO RETREAT.["]**

Petitioner claims the trial court committed fundamental error by giving the jury instruction on the justifiable use of deadly force because the instruction improperly imposed a duty to retreat through its instruction. (Doc. 1-1 at 2). Petitioner raised a comparable issue in Issue II of his counseled initial brief on direct appeal. Ex. PP at 18-19, 24-30. Petitioner urged the 1st DCA to find the jury instructions were conflicting because they instructed Petitioner had a duty to retreat while also instructing Petitioner could stand his ground. Id. at 18-19. In its Answer, the state responded the trial court adequately instructed the jury on the stand your ground law while giving the broader, standard instructions as well, properly instructing the jury that Petitioner was relieved of the duty to retreat in certain circumstances. Ex. QQ at 13. See Ex. KK at 495-96. The 1st DCA affirmed. Ex. SS.

The record demonstrates, after the self-defense instruction and the instruction on aggravated assault, the court charged:

> The person is justified in using deadly force if he reasonably believes that such force is necessary to prevent, number one, imminent death or great bodily harm to himself or another or the imminent commission of an aggravated assault against himself or another.

In deciding whether the defendant is justified in the use of deadly force you must judge him by the circumstances by which he was surrounded at the time the force was used.

The danger facing the defendant need not have been actual. **However, to justify the use of deadly force the appearance of danger must have been so real that a reasonably cautious and prudent person under the circumstances would have believed the danger would have been avoided only through the use of that force. Based upon appearances the defendant must have actually believed that the danger was real.**

**If the defendant was not engaged in an unlawful activity and was attacked in any place where he had a right to be he had no duty to retreat and had the right to stand his ground and meet force with force including deadly force if he reasonably believed that it was necessary to do so to prevent death or great bodily harm to himself or to prevent the commission of a forcible felony.**

In considering the issue of self-defense you may take into account the relative physical abilities and capacities of the defendant and Tarnesha Ellis.

Ex. KK at 495-96.

As noted by Respondents, in this ground, Petitioner claims fundamental error under Florida law. Petitioner states he presented some evidence of self-defense, but the justifiable use of deadly force instruction directly conflicted with the stand your ground instruction, essentially negating his only defense. (Doc. 1-1 at 2-3).

As noted previously, defense counsel waived any complaints about the jury instructions, accepting the instructions on the record. The state, in its answer brief on direct appeal, countered Petitioner's argument: "[r]ead together, [the instructions] imply a person with no duty to retreat still has a duty to use deadly force only if reasonably necessary." Ex. QQ at 25. The state explained that just because retreat is no longer the first option by law, it does not excuse outright unreasonable uses of deadly force under Florida law. Id. In sum, the state argued, although Petitioner was required to use reasonable means to avoid deadly force, he still had no duty to retreat if he were acting lawfully in a place where he had a right to be. Id. at 27. Finally, the state urged the 1st DCA to find no fundamental error in light of the complete jury instructions provided to the jury. Id. at 29. The 1st DCA per curiam affirmed. Ex. SS.

This claim involves statutory interpretation of a state law by state courts, not a claim of constitutional dimension that Petitioner is in custody in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a). Indeed, if erroneous, whether the giving of the instruction amounts to fundamental error is a question of state law. Of course, the 1st DCA, the arbiter of this question, rejected the claim. Thus, this Court should not step into the fray to address a matter of state-

created rights.  The writ of habeas corpus under 28 U.S.C. § 2254 "was not enacted to enforce State-created rights." <u>Cabberiza v. Moore</u>, 217 F.3d 1329, 1333 (11th Cir. 2000) (citing <u>Branan v. Booth</u>, 861 F.2d 1507, 1508 (11th Cir. 1988)), <u>cert. denied</u>, 531 U.S. 1170 (2001).

The law in the Eleventh Circuit allows that only in cases of federal constitutional error will a federal writ of habeas corpus be available.  <u>See</u> <u>Jones v. Goodwin</u>, 982 F.2d 464, 471 (11th Cir. 1993); <u>Krasnow v. Navarro</u>, 909 F.2d 451, 452 (11th Cir. 1990). Consequently, federal habeas relief does not lie for errors of state law.  It is certainly not the province of this Court to reexamine state-court determinations on issues of state law.  <u>See</u> <u>Estelle v. McGuire</u>, 502 U.S. at 67-68.  "This limitation on federal habeas review is of equal force when a petition, which actually involves state law issues, is 'couched in terms of equal protection and due process.'"  <u>Branan v. Booth</u>, 861 F.2d 1507, 1508 (11th Cir. 1988) (quoting <u>Willeford v. Estelle</u>, 538 F.2d 1194, 1198 (5th Cir. 1976)).

The federal habeas corpus court will be bound by the Florida court's interpretation of its own laws unless that interpretation breaches a federal constitutional mandate.  <u>McCoy v. Newsome</u>, 953 F.2d 1252, 1264 (11th Cir. 1992) (per curiam), <u>cert. denied</u>, 504 U.S. 944 (1992).  Since this ground presents an issue that is not

cognizable in this habeas proceeding, it cannot provide a basis for federal habeas corpus relief. Furthermore, there is no breach of a federal constitution mandate and Petitioner is not entitled to federal habeas relief on ground two.

**GROUND THREE: THE IMPOSITION OF A SENTENCE OF LIFE IMPRISONMENT MUST BE PRESUMED VINDICTIVE WHERE THE RECORD RELEVANT TO THE QUESTION OF VINDICTIVENESS CANNOT BE RECONSTRUTED.**

In support of this claim, Petitioner references a Florida case, Delap v. State, 350 So. 2d 462 (Fla. 1977) (per curiam), and argues he is entitled to a new trial because a conference was not recorded by a court reporter and a record of the proceeding cannot be reconstructed as the parties disagree as to precisely what transpired at the proceeding and the presiding judge expressed vindictive notions and is deceased.[4] (Doc. 1-1 at 3-4). Petitioner believes the trial judge had some pre-disposed inclination to sentence Petitioner to a greater sentence after the second trial based on some of the court's comments at a conference. Id. Petitioner raised a similar claim in Issue III of his direct appeal brief.[5] Ex. PP, Initial Brief of Appellant, at 30-33.

[4] Petitioner states in the Petition the conference occurred pre-trial, on January 6, 2001 [sic] (Doc. 1-1 at 4).

[5] Although this issue is presented somewhat inconsistently throughout the Petitioner's pleadings, on appeal, Petitioner claimed, "the trial court instructed the parties, before trial, to research this issue." Ex. PP, Initial Brief of Appellant, at 14. The state noted the unreported conference in question occurred between trial and sentencing. Ex. QQ, Answer Brief of Appellee,

In his second trial, tried before the late Honorable Jefferson Morrow, a conference occurred in chambers, unrecorded, between trial and sentencing.  Ex. QQ, Answer Brief of Appellee, at 30. Apparently, Judge Morrow asked for briefing on sentencing, and the parties satisfied his request, with the state filing a memorandum on January 28, 2011, and the defense filing a memorandum on January 31, 2011.  Ex. HH at 564-68, 569-73.

In the close of the defense memorandum, defense counsel argued:

> In conclusion, because the same evidence was adduced at trial as the first; Defendant earning his G.E.D. (among other certifications) since being imprisoned; the employing of the same defense strategy; **the Court's request of the parties to research this issue while in chambers prior to trial and before any evidence had been heard-any sentence imposed greater than 45 years will compel Defense to argue that such is unfounded, violates due process, and is clouded with vindictiveness.**

Id. at 573 (emphasis added).

At sentencing, during closing argument, the state argued it was the defendant's burden to show vindictiveness if the court were to sentence Petitioner to a sentence greater than 45 years.  Ex. HH at 611, Sentencing Transcript of February 2, 2011.  The state also distinguished Petitioner's case from other published

---

at 30.  The trial occurred on January 10-12, 2011.  Ex. II; Ex. JJ; Ex. KK.

vindictiveness cases, pointing out Petitioner had a new judge for the second trial, eliminating any notion of vindictiveness on the part of the initial trial judge relating to a defendant prevailing on appeal of the first trial. Id. at 611-12. The state posited it was within the trial court's discretion to sentence Petitioner to the maximum penalty, life, and the state urged the court to do so. Id. at 613. In closing, the prosecutor said his recollection of what happened in chambers (at the un-recorded conference) was entirely different from defense counsel's recollection. Id. at 613-14. The prosecutor recalled he expressed the position that Petitioner could be given a greater sentence, and then told the court the state would be providing law to back that notion up. Id. He further recalled, the court, upon hearing the state's position and stated intention to provide law, said, "I'd like to hear law from both sides so that I will be educated to that issue[.]" Id. at 614. The prosecutor said, thereafter, based on the court's directive, the parties provided memoranda. Id.

Defense counsel, in closing argument, stated, when the court asked the parties to research the sentencing issue, counsel was "not saying it was vindictive at that time[.]" Id. at 617. Defense counsel surmised that the trial court was asking questions "because it was contemplating giving a sentence in excess of 45 years." Id. Thereafter, defense counsel acknowledged that the court has

"wide discretion" in sentencing, but argued, it could be inferred, by asking for briefing, the court was contemplating giving a greater sentence before hearing any of the sentencing facts. Id. at 617-18. After argument, Petitioner took the stand, apologized to the victim's family, and asked the court to not be vindictive. Id. at 620-21.

The court, in pronouncing sentence, said it had "no vindictiveness" against Petitioner due to his exercising his appellate rights. Id. at 621. The court, however, found "the physical facts astounding." Id. The court said the facts showed a gruesome and brutal killing, evincing a medieval torture scene. Id.at 621-22. The court also noted the first trial was tried under a first degree murder theory with the question of premeditation going to the jury, whereas the second trial was tried under a second degree murder theory. Id. at 622. The court pointed out that, at the second trial, the prosecutor presented evidence concerning the child seeing the mother and testimony from a blood splatter expert witness (who did not testify as an expert at the first trial). Id.

In making its ruling, the court specifically said it was not issuing the sentence in vindictiveness, but, "the facts cry out for a life sentence, period." Id. at 623. The court explained, the victim, a 23-year-old woman, in a horrible scene, was beaten

throughout the house, tortured, and murdered. <u>Id</u>. The court sentenced Petitioner to life in prison. <u>Id</u>.

Upon review, Petitioner raised a comparable claim in Issue III of his brief on direct appeal of the second trial. Ex. PP at 29-38. The 1st DCA affirmed per curiam. Ex. SS.

In the counseled direct appeal brief, it was first noted, generally, there is no presumption of vindictiveness if a defendant is resentenced by a successor judge, which is what occurred in Petitioner's case. Ex. PP at 31. Appellate counsel recognized Petitioner had the burden to prove "actual vindictiveness." <u>Id</u>.

The state, in its answer brief, said:

> Montgomery's sentence was largely based on the extreme brutality of the crime, buttressed by the additional blood spatter evidence. It was also based on the different theory of prosecution in the second trial; and, in passing, on the evidence the victim's young son saw his mother's condition. The court expressly disavowed any vindictiveness based on Montgomery's exercise of his appellate rights.

Ex. QQ, Answer Brief of Appellee, at 33.

Although Petitioner provided the circuit court with a Statement of the Evidence, stating the facts giving rise to the vindictiveness claim occurred in an in-chamber conversation on January 6, 2001[6] [sic] (alleged date of final pretrial), when the

---

[6] Later in the statement, counsel referred to the in-chambers meeting taking place on January 6, 2011. Ex. NN, Statement of the

court inquired as to whether it was bound by the prior 45-year sentence. Ex. NN, Statement of the Evidence, at 1. Defense counsel related that a friendly debate ensued concerning the state of the law, and because the parties disagreed as to the controlling law, the court instructed the parties to research the issue. Id. Defense counsel "presumed" the court intended to impose a stiffer sentence. Id. The circuit court, after reviewing Petitioner's statement and the state's submission of the transcript of the sentencing hearing on February 2, 2011, stated it was "unable to resolve the parties dispute because the undersigned did not preside over the proceedings in dispute." Ex. NN, Order on Statement of the Evidence. The circuit court also noted the presiding and sentencing judge is deceased. Id.

Based on all of the above, it is clear, the prophylactic rule of North Carolina v. Pearce, 395 U.S. 711 (1969) is inapplicable to Petitioner's situation as Petitioner had a different judge for the second trial. Texas v. McCullough, 475 U.S. 134, 138, 140 (1986). Moreover, Petitioner did not raise a due process claim on direct appeal, nor does he raise a due process claim in his Petition.[7]

_____

Evidence, at 2. This is apparently the correct date of the un-recorded proceeding as the second trial occurred in 2011, not 2001.

[7] Due process of law requires that vindictiveness against a defendant for successfully attacking his conviction should play

McCullough teaches vindictiveness of the sentencing judge is the evil to be prevented, not the enlargement of a sentence after a new trial. Id. at 138. If a second court imposes a longer sentence, the presumption is inapplicable. Id. (citing Colten v. Ky., 407 U.S. 104 (1972)). Indeed, unlike a trial judge who has been reversed, a new judge has "no motivation to engage in self-vindication." Id. at 139 (quoting Chaffin v. Stynchcombe, 412 U.S. 17, 27 (1973)).

Relying on mere speculation or the personal impression of defense counsel and/or Petitioner, the defense raised the specter of vindictiveness, even while admitting the trial court was not acting vindictively at the time it asked for briefing on the sentencing question after the second trial. Of import, Judge Morrow was not the trial/sentencing judge for the first trial. On the record, he provided a wholly logical, non-vindictive reason for sentencing Petitioner to life in prison and announced he was not acting vindictively. This sentencing decision was well within the court's broad discretion.

Judge Morrow sentenced Petitioner to life in prison although Petitioner had previously been sentenced to forty-five years in prison after the first trial. See Ex. HH, Sentencing Transcript

_____

absolutely no part in the re-sentencing decision made by a judicial officer.

of February 2, 2011.  On this record, the judge's rational for sentencing Petitioner to life in prison did not evince vindictiveness against the Petitioner for having successfully appealed his first conviction and sentence.  This record lacks "actual vindictiveness."

As noted by Respondents, Petitioner "does not seek relief in federal habeas on the ground that the trial court's imposition of a life sentence following retrial violates due process."  Response at 23.  Consequently, Petitioner does not raise a claim of constitutional dimension.  Any entitlement to relief under state law for satisfying the conditions set forth in <u>Delap</u> is not something to be addressed on federal habeas review as it would simply be correction of an error based on state law.  As such, Petitioner is not entitled to federal habeas relief on ground three.

## VI.  REMAINING GROUNDS

In the remaining grounds, Petitioner raises claims of ineffective assistance of trial counsel.  To prevail on a Sixth Amendment claim, Petitioner must satisfy the two-pronged test set forth in <u>Strickland v. Washington</u>, 466 U.S. 668, 688 (1984), requiring that he show both deficient performance (counsel's representation fell below an objective standard of reasonableness) and prejudice (there is a reasonable probability that, but for

counsel's unprofessional errors, the result of the proceeding would have been different). See Brewster v. Hetzel, 913 F.3d 1042, 1051-52 (11th Cir. 2019) (reviewing court may begin with either component).

In order to obtain habeas relief, a counsel's errors must be so great that they adversely affect the defense. In order to satisfy this prejudice prong, the reasonable probability of a different result must be "a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.

The standard created by Strickland is a highly deferential standard, requiring a most deferential review of counsel's decisions. Richter, 562 U.S. at 105. Not only is there the "Strickland mandated one layer of deference to the decisions of trial counsel[,]" there is the added layer of deference required by AEDPA: the one to a state court's decision. Nance, 922 F.3d at 1303. Thus,

> Given the double deference due, it is a "rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding." Johnson v. Sec'y, DOC, 643 F.3d 907, 911 (11th Cir. 2011). And, for the reasons we have already discussed, it is rarer still for merit to be found in a claim that challenges a strategic decision of counsel.

Nance, 922 F.3d at 1303.

**GROUND FOUR: INEFFECTIVE ASSISTANCE OF COUNSEL: COUNSEL RENDERED I.A.C. BY FAILING TO OBJECT TO IMPROPER ARGUMENT/COMMENTS BY THE PROSECUTION DURING ITS' OPENING STATEMENT.**

Petitioner raised a comparable claim in ground one of his Rule 3.850 motion. Ex. WW at 3-5. The trial court directed the state to respond, id. at 26-27, and the state responded to Petitioner's allegations. Id., Response to Defendant's Motion for Post-Conviction Relief (Rule 3.850 Response), at 56-61. In denying post-conviction relief, the trial court stated: "[u]pon review, the record refutes Defendant's entitlement to relief [Exhibit D]." Id. at 311 (footnote omitted). Exhibit D contains the very detailed Rule 3.850 Response and supporting attachments. The court also referenced Barnes v. State, 38 So. 3d 218 (Fla. 2d DCA 2010) (allowing for a summary denial -rather than providing rationale- of a Rule 3.850 motion by incorporating a response from the state as long as the state has provided the necessary record documents).

Of import, **t**he state, in its Rule 3.850 Response, specifically referenced the two-pronged Strickland standard. Rule 3.850 Response at 57-58. The state, incapsulating Petitioner's complaint about the allegedly objectionable comments made by the prosecutor in opening statement, summarized the four areas: (1) the statements concerning the weapons used to beat the victim and

24

the means used to accomplish the victim's death; (2) the statements playing on the sympathy of the jury by describing the victim, her son, and the fact that the victim bought a house and was doing the best she could to keep her household; (3) the statements that Petitioner removed the phone cords from the walls, preventing the victim from getting help, while Petitioner beat the victim to death; and, (4) the statements about blood being everywhere. Id. at 58-61. The state noted there was evidence presented at trial supporting the comments, including testimony of the medical examiner; testimony from the victim's mother that although a single parent, the victim kept a neat and clean home; testimony from the evidence technician that the phone was on the floor and the cord and jack were damaged and out of the wall; and finally, testimony from the blood spatter expert about blood being all over, including the ceiling, and the possible use of household items as weapons. Id.

The state argued, as evidence was put forth supporting the opening statement, any failure of defense counsel to object did not amount to deficient performance. Id. at 61. The state also submitted Petitioner failed to demonstrate prejudice. Id. After adopting the state's response (with attachments), the trial court denied post-conviction relief. Ex. WW at 311-12.

As this was the second trial for Petitioner, defense counsel was well aware of the evidence that was going to be put on by the prosecutor. Here, failure to raise meritless objections to the prosecutor's opening statement did not prejudice Petitioner's case. At trial, the state presented a wealth of evidence against Petitioner. Since the prosecutor's comments in opening were an interpretation of the evidence to be presented at trial, and clearly based on the actual testimony and evidence presented, there was no deficiency in counsel's performance in failing to object to the comments based on the evidence. Petitioner has also failed to demonstrate prejudice. As such, Petitioner has not established that the state court decision was contrary to or an unreasonable application of federal law, nor that there was an unreasonable determination of the facts.

Petitioner appealed the denial of his Rule 3.850 motion. Pursuant to Wilson, it is assumed the 1st DCA adopted the reasoning of the trial court in denying the motion. Ex. XX. The state has not attempted to rebut this presumption. Deference under AEDPA should be given to the last adjudication on the merits provided by the 1st DCA. Upon review, the Florida court's decision is not inconsistent with Supreme Court precedent, including Strickland and its progeny. Moreover, the state court's adjudication of this

claim is not contrary to or an unreasonable application of Strickland or based on an unreasonable determination of the facts. As such, ground four is due to be denied.

**GROUND FIVE: INEFFECTIVE ASSISTANCE OF COUNSEL; COUNSEL RENDERED I.A.C. BY FAILING TO OBJECT TO HEARSAY STATEMENTS OF THE VICTIM'S 3-YEAR-OLD SON AND/OR FILE A MOTION IN LIMINE TO PROHIBIT SAME.**

In the supporting facts for this ground, Petitioner states the victim's grandmother, Mercie Ellis, testified as to a hearsay statement of the victim's son: "Momma got ketchup all over her hand and face." (Doc. 1-1 at 6). Petitioner surmises this comment "took away any presumption that [the child] did not witness the event in question." Id. Petitioner also asserts the prosecutor's comment in opening statement that there were no eyewitnesses to the murder, and the child was too young to testify, improperly implied the child witnessed the crime. Id.

Petitioner asserts his counsel was ineffective for failure to file a pre-trial motion in limine to prohibit any mention of the child witnessing the event or the introduction of hearsay testimony concerning what he may have said. Id. Petitioner raised a comparable claim in ground two of his Rule 3.850 motion. Ex. WW at 5-6. The state, in its Rule 3.850 Response, argued the statement of the child was a spontaneous statement to the great grandmother and non-testimonial; therefore, the statement was

admissible regardless of the availability of the child witness. Id. at 62-63. As such, the state urged the trial court to find Petitioner failed to demonstrate a legal deficiency in failing to object to the statement as it was properly admitted. Id. at 63. Alternatively, the state argued any admission of the statement was harmless because there was cumulative evidence there was blood scattered about the scene and on the victim. Id.

The record demonstrates, in opening statement, the prosecutor said: "[a]nd you'll hear that there were no eyewitnesses to the murder. The boy was too young in order to be able to testify but – and he was in another room[.]" Ex. II at 20. Mercie Ellis testified, without objection, that her great grandson, when he was brought to her house, held up his hand and said, "my mama had got ketchup on her hand and all over her face." Id. at 45.

Based on a review of the state's opening statement in its entirety, the prosecutor first said there were no eyewitnesses to the murder, and then he clarified his comment about the child being too young to testify by stating the boy was in a different room. Reviewing the comments in context, defense counsel's performance was not deficient for failure to file a pre-trial motion in limine. The prosecutor never said the child witnessed the killing. In fact, the prosecutor said the boy was in a different room. As to

the great grandmother's testimony as to the child's spontaneous statement to her that the victim, the boy's mother, had ketchup on her hand and face, defense counsel did not perform below an objective standard of reasonableness by failing to file a motion in limine to prohibit this testimony. As noted by Respondents, this was not a testimonial statement but rather a spontaneous statement made by the child to his great grandmother. Thus, the statement was properly introduced into evidence and any objection would have been fruitless and any attempt to obtain relief through a motion in limine unsuccessful.

Alternatively, due to cumulative evidence presented at trial regarding blood being found throughout the house and on the victim, there was no prejudice to the defense based on any failure by counsel to file a motion in limine as subscribed by Petitioner. Petitioner has failed to satisfy the prejudice prong of Strickland; the result of the proceeding would not have changed as numerous witnesses testified to the extent of the victim's wounds and the blood and food found on her person and throughout the house. See Arins v. McNeil, No. 07-60999-Civ-COHN, 2008 WL 2264503, at *9 (S.D. Fla. Mar. 28, 2008) (finding error harmless beyond a reasonable doubt given the overall strength of the prosecution's

case, consisting of more than hearsay evidence), <u>report and recommendation adopted by</u> 2008 WL 2264499 (S.D. Fla. June 2, 2008).

The 1st DCA affirmed the decision of the trial court rejecting this claim of ineffective assistance of counsel. Ex. XX. The 1st DCA's decision, although unexplained, is entitled to AEDPA deference. Applying the look through presumption described in <u>Wilson</u>, the state court's ruling is based on a reasonable determination of the facts and a reasonable application of the law. Thus, the Florida court's decision is not inconsistent with Supreme Court precedent, including <u>Strickland</u>, and the state court's adjudication of the claim is not contrary to or an unreasonable application of <u>Strickland</u> or based on an unreasonable determination of the facts. Thus, ground five is due to be denied.

**GROUND SIX: INEFFECTIVE ASSISTANCE OF COUNSEL: COUNSEL RENDERED I.A.C. BY FAILING TO REQUEST THE SPECAIL JURY INSTRUCTIONS REGARDING USE OF EXCESSIVE FORCE WHERE EVIDENCE EXISTED TO WARRANT SUCH INSTRUCTION.**

Petitioner claims, in ground six, trial counsel's performance was deficient for failure to request a special jury instruction that if the jury were to find the claim of self-defense insufficiently supported, the killing may arguably be manslaughter if the jury finds from the result of sudden heat of passion, the defendant used more force than reasonable. (Doc. 1-1 at 7). Petitioner raised a comparable claim in ground three of his Rule

3.850 motion.  Ex. WW at 6-8.  The state, in its Rule 3.850 Response, pointed out that in the first trial, defense counsel requested four special jury instructions relating to the use of excessive force and manslaughter; however, the trial court denied all four requests.  Id. at 65.  Moreover, the state related, Petitioner's proposed instruction "quotes the exact language and case law cited from the previously offered special instructions." Id. (citation omitted).  The state recognized the trial court declined to adopt the special instructions, finding the standard jury instructions sufficient.  Id. at 65-66.

Notably, the state argued the standard jury instructions are presumed to be correct and are generally given preference over other instructions, relying on Stephens v. State, 787 So. 2d 747, 755-756 (Fla. 2001) (per curiam), cert. denied, 534 U.S. 1025 (2001).  Id. at 67.  The state urged the trial court to conclude defense counsel was not ineffective for failure to request the special instructions Petitioner's believed suitable in the second trial because the proposed instructions had already been rejected by the trial court in the first trial and the standard instructions were sufficient to address Petitioner's concerns about the use of excessive force in defending himself.  Id. at 68.  In conclusion, the state urged the court to deny post-conviction relief because

Petitioner failed to demonstrate legal deficiency on the part of counsel, or any prejudice to himself, in any failure to request special jury instructions for the second trial. Id.

The trial court denied post-conviction relief. Ex. WW at 311-12. The 1st DCA affirmed. Ex. XX.

The record demonstrates the court charged: "[i]f you find that Tarnesha Ellis was killed by Steven Montgomery you will then consider the circumstances surrounding the killing in deciding if the killing was murder in the second degree or manslaughter or whether the killing was excusable or resulted from justifiable use of deadly force." Ex. KK at 489. The court then instructed the jury on homicide, second degree murder, manslaughter, and self-defense (the justifiable use of deadly force). Id. at 490-494.

The record shows that during the first trial, Petitioner requested special jury instructions on the use of excessive force. Ex. A at 59-66. The trial court, after hearing counsel's request and argument, declined to give the special instructions, finding they were not sufficient to supplant the standard instructions and would not be read in addition to the standard instructions. Ex. F at 656-57.

As such, it can be concluded defense counsel in the second trial had a reasonable basis not to request these same special

instructions in the second trial as they had already been rejected in the first. Based on the record, it would likely be an effort in futility to make these same requests in the second trial. The record demonstrates the trial court gave the standard jury instructions on the justifiable use of deadly force and stand your ground law in the second trial without objection.

There was no deficient performance, and Petitioner has not demonstrated prejudice under Strickland as the instructions given addressed the theory of defense, that Petitioner's actions started as self-defense but evolved into manslaughter in the heat of passion. The 1st DCA affirmed without an opinion and explanation. Ex. XX. This decision, although unexplained, is entitled to AEDPA deference. Applying the look through presumption described in Wilson, the state court's ruling is based on a reasonable determination of the facts and a reasonable application of the law.

The Florida court's decision is not inconsistent with Supreme Court precedent, including Strickland, and the state court's adjudication of the claim is not contrary to or an unreasonable application of Strickland or based on an unreasonable determination of the facts. Ground six is due to be denied.

**GROUND SEVEN: INEFFECTIVE ASSISTANCE OF COUNSEL: COUNSEL RENDERED I.A.C. BY FAILING TO FILE A MOTION IN LIMINE TO PRECLUDE**

**SPECULATION OR OPINION TESTIMONY REGARDING THE ALLEGED ITEMS OR OBJECTS USED AS WEAPONS, WHEN ONLY AN IRON AND/OR METAL BROOMSTICK WERE CHARGED IN THE INFORMATION.**

Petitioner raised a comparable claim in ground four of his Rule 3.850 motion. Ex. WW at 8-10. The state, in its Rule 3.850 Response, addressed this ground, asserting the state could properly admit any weapon arguably used to kill the victim. Id. at 68-72. Thus, the state urged the court to deny the claim, as counsel would not have prevailed in his request. Id. at 70.

Although the Indictment charged Petitioner with a killing "by strangulation, and/or suffocation, and/or blunt force trauma, and during the commission of aforementioned murder . . ., [Petitioner] carried, displayed, used, threatened to use, or attempted to use a weapon, to-wit: a clothing iron and/or a metal broomstick, contrary to the provisions of sections 782.04(1)(a) and 775.087(1), Florida Statutes[,]" Ex. A at 44, the use of a weapon is not an element of the crime. Response at 53. See Mitchell v. State, 888 So. 2d 665, 668 (Fla. 1st DCA 2004) (per curiam) (citing In the Interest of W.M., 491 So. 2d 1263 (Fla. 4th DCA 1986)). The language identifying the weapon or means of killing is "surplusage." Id. at 668. Weapons are named for classification purposes under Fla. Stat. § 775.087(1), but they are not limiting. Connolly v. State, 172 So. 3d 893, 906 (Fla. 3d DCA 2015)

(reference to section 775.087 puts "defendant on notice that a conviction for a lesser included offense in that count could subject him to an enhancement and/or a reclassification of the lesser offense"). <u>See</u> Ex. A at 88-89.

Thus, any failure of counsel to file a motion in limine or to object to the testimony about various weapons and means of killing would not have amounted to deficient performance. Upon review of the trial transcript, "the testimony showed that any number of the collected items could have been used as a weapon to injure the victim, which made the items relevant to the death of the victim by blunt force trauma." Ex. WW at 71. Also, the state presented the expert testimony of Dr. Scheuermann that the victim died from manual strangulation in association with blunt force trauma. <u>Id</u>. This testimony was relevant and admissible, and Petitioner has failed to demonstrate any legal deficiency or prejudice in counsel's failure to challenge the admission of the various items or the testimony on strangulation.

Of import, the defense did put on its own expert, Dr. Stanton Kessler, to challenge the state's expert's testimony and his conclusion that strangulation played a part in the victim's death. Ex. KK at 414-86. Dr. Kessler attested there was an insufficient

basis to support Dr. Scheuermann's conclusion of manual strangulation. Id. at 437.

The record shows defense counsel performed effectively by putting on the defense's own witness to testify that the victim died of multiple injuries due to blunt trauma in a setting of multiple left rib fractures, left hemopneumothorax (blood and air in the lung), and fat emboli to the lungs, but not strangulation. Id.

The Court concludes AEDPA deference is warranted. The record shows the 1st DCA affirmed the decision of the trial court, Ex. XX, and the Court presumes that the appellate court adjudicated the claim on its merits, as there is an absence of any indication of state-law procedural principles to the contrary. Since the last adjudication is unaccompanied by an explanation, it is Petitioner's burden to show there was no reasonable basis for the state court to deny relief. He has failed in this endeavor. Thus, the Court finds the state court's adjudication of this claim is not contrary to or an unreasonable application of Strickland or based on an unreasonable determination of the facts. As such, ground seven is due to be denied.

**GROUND EIGHT: INEFFECTIVE ASSISTANCE OF COUNSEL: COUNSEL RENDERED I.A.C. BY FAILING TO OBJECT TO THE VICTIM'S PHOTO BEING SHOWN DURING THE ENTIRE CLOSING ARGUMENT.**

Petitioner complains, during closing argument, the prosecutor displayed a large photograph of the victim. (Doc. 1-1 at 10). Petitioner asserts his counsel performed deficiently by failing to object to this display which allegedly served to invoke the sympathy of the jury. Id. Petitioner raised this same issue in ground five of his Rule 3.850 motion. Ex. WW at 10-11. The state, in its Rule 3.850 Response, explained the photograph shown during closing was the identification photograph of the victim used by the medical examiner. Id. at 72-73. The state urged the court to deny the claim of ineffective assistance of counsel because photographs are useful and may be displayed when the manner of death is contested or when otherwise relevant to the facts and issues of the case. Id. at 73. See Stephens v. State, 975 So. 2d 405, 416-17 (Fla. 2007) (per curiam) ("Counsel is not ineffective for making a tactical decision not to object to statements and photographs introduced during the State's closing arguments when those statements and photographs were not improper."). As noted previously, the manner of death was contested, as the defense was challenging the state's expert's conclusion that strangulation played a part in the victim's death. The state submitted, under the circumstances presented, defense

counsel did not perform deficiently, and Petitioner was not prejudiced by any failure to object. Id. at 73.

The trial court denied relief. Ex. WW at 311-12. The 1st DCA per curiam affirmed. Ex. XX. As such, the state court determined Petitioner failed to satisfy the requirements to prevail under Strickland. Without meeting the Strickland two-pronged standard, Petitioner cannot prevail on his claim of ineffective assistance of trial counsel. Thus, ground eight is due to be denied. Defense counsel's representation was not so filled with serious errors that defense counsel was not functioning as counsel guaranteed by the Sixth Amendment. The state court's determination that Petitioner failed to satisfy the performance and prejudice prongs of Strickland is consistent with federal precedent.

This Court will presume the state court, the 1st DCA, adjudicated the claim on its merits as there is an absence of any indication or state-law procedural principles to the contrary. Applying the "look-through" presumption of Wilson, the rejection of the claim of ineffective assistance of counsel for failure to make an objection to the display of the victim's photograph during closing was based on a reasonable determination of the facts and a reasonable application of Strickland. Petitioner has failed to

show there was no reasonable basis for the 1st DCA to deny relief. The state court's adjudication of this claim is not contrary to or an unreasonable application of <u>Strickland</u> or based on an unreasonable determination of the facts. Therefore, Petitioner is not entitled to habeas relief on ground eight.

**GROUND NINE: INEFFECTIVE ASSISTANCE OF COUNSEL: COUNSEL RENDERED I.A.C. BY FAILING TO HAVE THE PETITIONER'S STATEMENT PUT INTO EVIDENCE AS IT CONTAINED FACTS SUPPORTING THE DEFENSE THEORY AND WOULD HAVE DISPROVED THE ELEMENTS OF SECOND DEGREE MURDER.**

Petitioner raised a comparable claim in ground six of his Rule 3.850 motion. Ex. WW at 11-14. Generally, Petitioner said he spoke with the detectives and provided them with his version of the events concerning the victim's death. <u>Id</u>. at 11. Petitioner claimed he and the victim fought, and Petitioner struck the victim multiple times with his hands and other objects in an attempt to disarm the victim as she came after Petitioner with a knife. <u>Id</u>. He said he poured bleach and food items over the victim in various areas of the house. <u>Id</u>. When the victim became unconscious, Petitioner attempted to revive her using C.P.R., and when his attempts to revive her proved unsuccessful, he made sure rescue was called, and after rescue arrived, he left because he was afraid. <u>Id</u>. He mentioned the victim went to the kitchen to get a second knife once disarmed. <u>Id</u>. at 12. Petitioner said when

the victim had difficulty breathing and asked for water, Petitioner provided her with water and wiped off food and blood.  Id.

Petitioner argues his counsel should have brought out the substance of this statement through cross-examination of Dennis Sullivan, the lead detective, after the state opened the door by asking a question that brought forth mention of Petitioner's statement.  Id. at 12.  Petitioner asserts counsel improperly advised Petitioner that the statement could not be brought forth without Petitioner taking the stand.  Id.

The state responded to the post-conviction motion, relying on the Strickland standard.  Id. at 57-58.  The state noted there was no mention of Petitioner's interview on direct.  Id. at 74.  The trial record demonstrates the following.  On direct, Detective Dennis Sullivan testified he came into contact with Petitioner on October 13, 2005, stating Petitioner was arrested and brought to Jacksonville, where on October 14, 2005, photographs were taken of him.  Ex. JJ at 394-95.  The questions on direct that followed concerned the content of the photographs, except for a few questions about obtaining a DNA sample from Petitioner on January 18, 2006.  Id. at 395-97.  On cross-examination, defense counsel inquired about the detective's opportunity to interview Petitioner.  Id. at 399.  Defense counsel asked about the length

of the interview, whether Petitioner was read his rights and understood those rights, whether Petitioner answered the detective's questions, and whether Petitioner was upset during the interview. Id. at 399-400. Detective Sullivan responded affirmatively to all of these questions. Id. When defense counsel attempted to cross examine Detective Sullivan concerning the events that happened, the prosecutor objected on the basis of hearsay and the court sustained the objection. Id. at 400. When a second attempt was made to inquire as to the information Petitioner provided, another objection was made. Id.

The prosecutor expounded upon his objection: "[m]y objection is the defendant can testify about anything he wants, but they can't elicit from this witness what the defendant said or what they derived from the defendant because it's all hearsay." Id. at 404. The court responded: "[i]ts self-serving." Id. The prosecutor said although the state could introduce it, the defendant cannot get the statement in through another witness as it is hearsay. Id. The court said it sounded like questions were getting close, so the court sustained the state's objection. Id. The court told defense counsel he could ask other things, "other things except his statements." Id. When defense counsel tried to inquire about the officer finding the knife based on

Petitioner's answers to questions, the state objected again stating it is hearsay. Id. at 404-405. The court ruled Petitioner could ask around the issue but could not ask about Petitioner's statements as the statements would be hearsay. Id. at 405. Defense counsel then asked the detective if an investigation was going on at the scene as well as Petitioner being interviewed, and the detective responded affirmatively, without objection. Id. Defense counsel asked if Petitioner was cooperative during the interview, and the detective responded affirmatively. Id. at 405-406.

The state in its Rule 3.850 Response noted the trial court sustained the state's objections based upon hearsay. Ex. WW at 74. The state argued defense counsel was not ineffective because counsel tried to elicit as much as he could from the detective, "but the trial court properly ruled that the exculpatory statement was inadmissible hearsay." Id. The trial court, adopting the state's response (with exhibits), denied post-conviction relief. Id. at 311-12. The 1st DCA affirmed. Ex. XX.

It is important to recognize that counsel's advice to Petitioner that he could not introduce Petitioner's statement without Petitioner taking the stand was absolutely correct as the out-of-court exculpatory statement would be inadmissible hearsay.

Defense counsel was able to elicit helpful testimony from the detective concerning Petitioner's willingness to cooperate with the police, his state of mind (being upset), the length of the interview, and a few other non-statement matters through effective cross examination. Otherwise, the state's objections based on hearsay were sustained. Defense counsel's performance was not deficient in this regard, nor was Petitioner prejudiced by counsel's performance.

The 1st DCA's decision, although unexplained, is entitled to AEDPA deference. Applying the look through presumption described in Wilson, the state court's ruling is based on a reasonable determination of the facts and a reasonable application of the law. Thus, the Florida court's decision is not inconsistent with Supreme Court precedent, including Strickland, and the state court's adjudication of the claim is not contrary to or an unreasonable application of Strickland or based on an unreasonable determination of the facts. Thus, ground nine is due to be denied.

**GROUND TEN: INEFFECTIVE ASSISTANCE OF COUNSEL: COUNSEL RENDERED I.A.C. BY FAILING TO FILE A MOTION IN LIMINE TO PREVENT SPECULATION ON WHAT SPATTER CONSTITUTED BLOOD.**

Petitioner raised a comparable claim of ineffective assistance of trial counsel in ground seven of his Rule 3.850 motion. Ex. WW at 14-15. Petitioner claimed, for his counsel to

be effective, he "should have filed a motion in limine to prevent speculation or prejudicial inferences that all of the smears or spatter was blood, where evidence to the contrary existed." Id. at 14. Petitioner added that counsel should have, at least, objected to the testimony on blood spatter. Id. at 15. In a detailed response, the state addressed Petitioner's contention. Id. at 75-78.

First and foremost, the record demonstrates defense counsel did file a motion in limine. Ex. HH at 535-36. He sought to prohibit the state from introducing any testimony of the state's witness, Michael Knox, as an expert in blood spatter analysis. Id. at 535. Defense counsel added that Mr. Knox may intend to recreate the crime scene, and he should not be allowed to testify as to the crime scene. Id. The substance of the motion in limine was taken up at trial. The state proposed that Mr. Knox would testify as to the type of blood spatter and the direction of force. Ex. II at 159. The court denied the motion in limine. Id. at 162. However, defense counsel added that he was not arguing that the height and direction-of-force testimony was objectionable, but he was concerned Mr. Knox would attempt to expand his testimony to include descriptions of the victim crawling, sitting, and kneeling. Id. at 163. The court agreed with defense counsel that

any testimony concerning the victim's position would be kept out. Id.

Thereafter, the court found Mr. Knox qualified as an expert. Id. at 170. Mr. Knox provided testimony concerning height, direction, and velocity of blood spatter. He did not testify as to the victim's position. He also testified there was food and blood throughout the house.

The record shows defense counsel was successful in obtaining a partial granting of his request to limit the testimony of the expert, and he certainly attempted to further limit more of the expert's testimony. For example, on direct, defense counsel objected when the expert attempted to testify about the swinging of an item, and his objection was sustained. Id. at 193. Defense counsel also objected to the expert's speculative testimony concerning the swing of a broom handle, and that objection was sustained. Ex. JJ at 206.

The record also shows defense counsel very effectively cross-examined the expert. The expert, on cross, admitted that a lot of the items he tested were negative for blood. Id. at 221. The expert attested that alternative light source testing was not utilized. Id. The expert testified the victim's clothes were not tested for blood, nor were Petitioner's. Id. at 222. The expert

testified there was food, including food of a reddish or brownish color, scattered about. Id. at 222-23. The expert stated there were food remnants on the blade of the knife found in the home. Id. at 224. The expert testified he did not test some of the spatter patterns for the presence of blood. Id. at 226. He did attest there were two areas that were positive for blood. Id.

The trial court denied the Rule 3.850 motion. Ex. WW at 311-12. The 1st DCA affirmed. Ex. XX. The 1st DCA's decision, although unexplained, is entitled to AEDPA deference. Applying the look through presumption described in Wilson, the state court's ruling is based on a reasonable determination of the facts and a reasonable application of the law. Thus, the Florida court's decision is not inconsistent with Supreme Court precedent, including Strickland, and the state court's adjudication of the claim is not contrary to or an unreasonable application of Strickland or based on an unreasonable determination of the facts. Thus, ground ten is due to be denied.

Alternatively, the record demonstrates counsel performed within the bounds of the standards of reasonableness. He filed a motion in limine. After hearing defense counsel's argument, the court agreed to limit the expanse of the expert's testimony. Furthermore, defense counsel successfully objected to portions of

the expert's testimony and effectively cross-examined the expert. Any error of counsel was not so great that it adversely affected the defense. Finally, Petitioner has not established prejudice under Strickland. Petitioner is not entitled to habeas relief on ground ten.

**GROUND ELEVEN: INEFFECTIVE ASSISTANCE OF COUNSEL: COUNSEL RENDERED I.A.C. BY FAILING TO OBJECT AND/OR PRESERVE FOR APPEAL HIGHLY INFLAMMATORY COMMENTS BY THE PROSECUTOR THAT PREJUDICED THE OUTCOME OF THE TRIAL.**

In his eleventh ground for relief, Petitioner raises a claim of ineffective assistance of counsel for failure to object to prosecutorial misconduct during closing argument. (Doc. 1-1 at 14). Petitioner contends the comments in question were speculative, improperly bolstered the state's case, played on the sympathy of the jury, and constituted improper argument. Id. at 14-15.

Petitioner raised a comparable claim in his Rule 3.850 motion in his eighth ground. Ex. WW at 15-18. The state responded, relying on the guidelines of Strickland, and succinctly summarized the comments Petitioner found objectionable: (1) it was not a fight because only the victim was hit and was naked; (2) it was a systematic killing and the defendant ensured the victim was going to die; (3) the defendant ensured the victim could not call for help by yanking the phone cords out of the wall; (4) the victim

47

could not testify because the defendant silenced her; (5) the defendant was mad at the victim for returning to an ex-boyfriend; (6) the defendant took a bath or shower after killing the victim; (7) the victim did not enter the child's room to ensure his safety; (8) the victim cowered in the closet as she was struck by defendant; (9) the defendant kept hitting the victim although she could not breathe and had difficulty describing her pain when her ribs punctured her lungs; (10) the defendant derived pleasure from striking a naked woman; (11) the prosecutor told the jury they could speculate regarding the evidence; and (12) the defendant used multiple weapons.  Ex. WW at 79.

The state argued none of these comments were objectionable; therefore, Petitioner's counsel was not ineffective for failure to object to the content of the prosecutor's argument.  Id. at 82. The state submitted these were reasonable conclusions drawn from the evidence presented at trial and could be properly drawn from this evidence.  Id. at 82-83. "Thus, the objected to arguments were merely inferences and conclusions that could be drawn from the evidence that was presented."  Id. at 83.  As such, the state moved the court to deny the Rule 3.850 motion as Petitioner "failed to demonstrate a legal deficiency in his attorney's failure to object to the State's closing argument."  Id.

In addressing a claim of ineffective assistance of trial counsel, this Court's inquiry is "whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." Strickland, 466 U.S. at 690. "[H]indsight is discounted by pegging adequacy to 'counsel's perspective at the time' . . . and by giving a 'heavy measure of deference to counsel's judgments.'" Rompilla v. Beard, 545 U.S. 374, 381 (2005) (citations omitted). The standard is reasonably effective counsel, not the perfect assistance of counsel.

Of importance, attorneys are allowed wide latitude during closing argument as they review evidence and explicate inferences which may reasonably be drawn from it. Tucker v. Kemp, 762 F.2d 1496, 1506 (11th Cir. 1985). In order to establish a substantial error by counsel for failure to object to prosecutorial misconduct, the prosecutor's "comments must either deprive the defendant of a fair and impartial trial, materially contribute to the conviction, be so harmful or fundamentally tainted as to require a new trial, or be so inflammatory that they might have influenced the jury to reach a more severe verdict than it would have otherwise." Walls v. State, 926 So. 2d 1156, 1167 (Fla. 2006) (per curiam) (citation omitted). Also, there must be a showing that there was no tactical

reason for failure to object.  Id.  Without a showing of the above, a petitioner fails to demonstrate the requisite prejudice. Id.

Failure to object during closing argument rarely amounts to ineffective assistance of counsel, particularly if the errors, if any, are insubstantial.  Upon review, any failure on defense counsel's part to object to the state's closing argument did not contribute significantly to the verdict.  Petitioner has failed to show his counsel's representation fell below an objective standard of reasonableness.  He has also failed to show there was a reasonable probability that the results of the trial would have been different but for the actions and/or omissions of his counsel.

Petitioner appealed the denial of his Rule 3.850 motion and the 1st DCA affirmed.  Ex. XX.  Pursuant to Wilson, this Court assumes the 1st DCA adopted the reasoning of the trial court in denying post-conviction relief.  No attempt to rebut this presumption has been made by the state.  The Court concludes deference under AEDPA should be given to the last adjudication on the merits provided by the 1st DCA.  It is also this Court's conclusion the Florida court's decision is not inconsistent with Supreme Court precedent, including Strickland and its progeny. The state court's adjudication of this ground is not contrary to

or an unreasonable application of Strickland or based on an unreasonable determination of the facts. Thus, ground eleven is due to be denied.

**GROUND TWELVE: INEFFECTIVE ASSISTANCE OF COUNSEL: COUNSEL RENDERED I.A.C. BY FAILING TO FILE A SUFFICIENT MOTION FOR NEW TRIAL ON THE WEIGHT AND/OR SUFFICIENCY OF THE EVIDENCE.**

Petitioner, in his supporting facts for this ground, states that although his counsel did file a motion for new trial, it was deficient because it "failed to point-out sufficient facts[.]" (Doc. 1-1 at 18). Petitioner raised a comparable claim in ground nine of his Rule 3.850 motion. Ex. WW at 19-20. The state responded. Of import, the state highlighted the fact that defense counsel filed a detailed and well-reasoned motion for a new trial. The record supports this contention. Ex. HH at 561-63. Not only did Petitioner's counsel argue that the trial court erred in denying the motion for judgment of acquittal, he also argued that the trial court erred in limiting the cross examination of Dr. Scheuermann and Detective Sullivan. Id. at 561-62. Defense counsel further claimed the trial court erred in not granting the motion for judgment of acquittal at the close of the evidence. Id. at 562. Counsel urged the court to find the verdict contrary to the weight of the evidence and to law. Id. The trial court denied the motion for new trial. Id. at 575, 602.

The state in its Rule 3.850 Response noted Petitioner's argument supporting this ground for relief is essentially a re-cap, a cumulative error argument, re-raising the issues raised in grounds one through eight of the Rule 3.850 motion, which were individually rejected by the trial court. Ex. WW at 85. As such, "[w]here allegations of individual error are found to be without merit, . . ., a cumulative error argument based thereon must fail also." Id. at 86 (citation omitted). The state further noted, as the underlying claims lacked merit, counsel's performance could not be deemed deficient for failure to raise the same claims in a motion for new trial. Id. (citation omitted). Finally, the state argued, a speculative claim that a more elaborate motion for new trial would have convinced the trial court to grant the motion for new trial should not prevail as Petitioner "failed to demonstrate any individual error demonstrating a legal deficiency by his attorney, or prejudice to himself[.]" Id.

The trial court denied relief. Id. at 311-12. The 1st DCA affirmed per curiam. Ex. XX.

Notably, the record shows defense counsel did not submit a formulaic motion for new trial. Instead, he presented a detailed and well supported motion. His performance did not fall below an objective standard of reasonableness. Speculation cannot be the

foundation of the claim of ineffective assistance of counsel, and Petitioner's suppositions do not satisfy the performance prong of Strickland. Moreover, Petitioner has not shown that the outcome would have changed had defense counsel included the issues Petitioner suggests should have been raised in the motion for new trial, particularly in light of the fact that the issues individually did not carry the day.

There is no expectation that competent counsel will be flawless in his performance. Richter, 562 U.S. at 110. To demonstrate ineffectiveness, a petitioner must show his counsel's choice was so patently unreasonable that no competent attorney would have chosen that path. Also, it is clear that the outcome would not have changed had counsel performed as Petitioner claims he should have. In sum, defense counsel's representation was not so filled with serious errors that counsel was not functioning as counsel guaranteed by the Sixth Amendment. Petitioner has neither satisfied the performance or prejudice prong of Strickland. As such, Petitioner is not entitled to habeas relief on ground twelve.

Deference under AEDPA should be given to the last adjudication on the merits provided by the 1st DCA. The Florida court's decision is not inconsistent with Supreme Court precedent, including Strickland and its progeny, and the court's adjudication

of this claim is not contrary to or an unreasonable application of
Strickland or based on an unreasonable determination of the facts.
Ground twelve is due to be denied.

**GROUND THIRTEEN: INEFFRECTIVE ASSISTANCE OF COUNSEL: COUNSEL
RENDERED I.A.C. BY FAILING TO OBJECT TO THE COURT'S FAILURE TO
APPLY THE LAW OF THE CASE AND THE IMPROPER SHIFTING OF THE BURDEN
OF PROOF TO MONTGOMERY TO PROVE THAT THE KILLING WAS NOT AN ACT OF
JUSTIFIABLE HOMICIDE.**

Petitioner raised a comparable claim in ground ten of his
Rule 3.850 motion. Ex. WW at 21-22. The state responded. Id.
at 87-89. Adopting this response, the trial court denied relief.
Id. at 311-12. The 1st DCA affirmed. Ex. XX.

It is important to recognize the underlying claim, the claim
upon which the claim of ineffective assistance of counsel is based,
was raised and rejected on direct appeal. As Issue I of the direct
appeal, Petitioner claimed the trial court committed fundamental
error by failing to apply the law of the case and imposing upon
appellant the burden to prove the killing was not an act of
justifiable homicide. Ex. PP. at i. The state responded and
argued the jury was correctly given the standard jury instruction
on justifiable and excusable homicide, without objection from
defense counsel, and the jury was separately instructed on self-
defense. Ex. QQ at 21. See Ex. KK, Trial Transcript at 489-98.

The state further noted defense counsel affirmatively accepted the instructions. Ex. QQ at 16-17.

Significantly, in the Response at 92, Respondents point out, in Elliot v. State, 49 So. 3d 269 (Fla. 1st DCA 2010) (per curiam), the court rejected the underlying claim the instructions were erroneous. In Elliot, the trial court gave the standard instructions on excusable and justifiable homicide and on burden of proof. Id. at 270. It further noted,

> this Court recently found no error **where the jury was not specifically instructed that the State had the burden to disprove self-defense beyond a reasonable doubt.** See Mosansky v. State, 33 So.3d 756, 758-59 (Fla. 1st DCA 2010) (holding that where a challenged jury instruction involves an affirmative defense, as opposed to an element of the crime, fundamental error only occurs where a jury instruction is so flawed as to deprive defendants claiming the defense of a fair trial).

Elliot v. State, 49 So. 3d at 270 (emphasis added).

A defense counsel need not make meritless motions or lodge futile objections that would not have obtained relief. Brewster, 913 F.3d 1056 (citations omitted). Under these circumstances, defense counsel would not have prevailed through an objection, as evinced by the decision of the trial court in denying post-conviction relief. Ex. WW at 311-12. Just as excusable and justifiable homicide not elements of the offense of second degree

murder, neither is self-defense an element of the offense, rather it is an affirmative defense, and the instructions were not erroneous as given.

Petitioner has failed to satisfy the <u>Strickland</u> requirements and he is not entitled to habeas relief on ground thirteen. The affirmance of the trial court's decision is entitled to deference. The 1st DCA affirmed the decision of the trial court. Ex. XX. Applying <u>Wilson</u>'s look-through presumption, the rejection of the claim of ineffective assistance of counsel for failure to object to the jury instructions was based on a reasonable determination of the facts and a reasonable application of <u>Strickland</u>. Finally, the Florida court's decision is not inconsistent with Supreme court precedent nor is it contrary to <u>Strickland</u>. Accordingly, Petitioner is not entitled to habeas relief on ground thirteen.

**GROUND FOURTEEN: INEFFECTIVE ASSISTANCE OF COUNSEL: COUNSEL RENDERED I.A.C. BY FAILING TO REQUEST THE STANDARD JURY INSTRUCTION FOR SECTION 776.013(3)(F) FLORIDA STATUTES AND FAILED TO OBJECT TO SECTION 3.6(F) WHICH IMPOSES A DUTY TO RETREAT, BOTH CLEARLY CONFLICT WITH EACH OTHER AND LIKELY CONFUSED THE JURY.**

In his final ground, Petitioner raises another claim of ineffective assistance of counsel, this time asserting his counsel's performance was deficient for failure to object to allegedly conflicting instructions on "justifiable use of deadly force" (which Petitioner claims imposed a duty to retreat), and

the stand-your-ground instruction. (Doc. 1-1 at 22-23). Petitioner raised a comparable claim in ground eleven of his Rule 3.850 motion. Ex. WW at 23-24.

A review of the trial court's instructions is in order. The court instructed the jury on self-defense:

> An issue in the case is whether the defendant acted in self-defense. It is a defense to the offense with which Steven Montgomery is charged if the death of Tarnesha Ellis resulted from the justifiable use of deadly force.
>
> Deadly force means force likely to cause death or great bodily harm.
>
> The use of deadly force is justifiable only if the defendant reasonably believes that the force is necessary to prevent imminent death or great bodily harm to himself while resisting, one, another's attempt to murder him or, number two, an attempt to commit an aggravated assault upon him or, three, an attempt to commit an aggravated assault upon any dwelling, residence or vehicle occupied by him.

Ex. KK at 494.

The court provided further instruction in pertinent part:

> In deciding whether the defendant is justified in the use of deadly force you must judge him by the circumstances by which he was surrounded at the time the force was used.
>
> The danger facing the defendant need not have been actual. However, to justify the use of deadly force the appearance of danger must have been so real that a reasonably cautious

and prudent person under the same circumstances would have believed **the danger would have been avoided only through the use of that force**. Based upon appearances the defendant must have actually believed that the danger was real.

If the defendant was not engaged in an unlawful activity and was attacked in any place where he had a right to be **he had no duty to retreat and had the right to stand his ground** and meet force with force including deadly force if he reasonably believed that it was necessary to do so to prevent death or great bodily harm to himself or to prevent the commission of a forcible felony.

In considering the issue of self-defense you may take into account the relative physical abilities and capacities of the defendant and Tarnesha Ellis.

If in your consideration of the issue of self-defense you have a reasonable doubt on the question of whether the defendant was justified in the use of deadly force you should find the defendant not guilty. However, if from the evidence you're convinced the defendant was not justified in the use of deadly force you should find him guilty if all the elements of the charge have been proved.

Id. at 495-96 (emphasis added).

Of import Petitioner raised the underlying claim of trial court error on direct appeal. Ex. PP at i. The state responded:

There was no inconsistency in the jury instructions. Read together, they imply a person with no duty to retreat still has a duty to use deadly force only if reasonably necessary. Just because retreat is no longer the first option by law, does not mean

> unreasonably [sic] deadly force is
> automatically excused.

Ex. QQ at 25. The state urged the 1st DCA to consider and address the instructions as a whole and deny relief. <u>Id</u>. at 27 ("Under the self-defense instruction as a whole, the jury was correctly told Montgomery did not have to retreat if he were acting lawfully in a place he had a right to be, but he first had to use other reasonable means to 'avoid' deadly force."). The 1st DCA affirmed per curiam. Ex. SS.

The trial court denied the Rule 3.850 motion raising the claim of ineffective assistance of counsel for failure to object to the instructions given or to request particular instructions. Ex. WW at 311-12. The 1st DCA affirmed. Ex. XX. In doing so, the Florida court rejected Petitioner's contention that his counsel was ineffective for failing to request instructions and/or object to the instructions given. Of course, the state courts are the expositors of state law and the state courts found no error in the manner in which the jury was instructed. <u>Bradshaw v. Richey</u>, 546 U.S. 74, 76 (2005) (per curiam) ("We have repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.") (citations omitted). Counsel will not be found ineffective for failing to raise a meritless

59

objection or for failure to request instructions when the instructions given were without error. Petitioner has failed to satisfy both the performance and prejudice prong of <u>Strickland</u> and he is not entitled to habeas relief on his final ground.

Pursuant to <u>Wilson</u>, this Court assumes the 1st DCA adopted the reasoning of the trial court in rejecting Petitioner's claim and denying post-conviction relief. The Court concludes deference under AEDPA should be given to the 1st DCA's last adjudication on the merits. The Florida court's decision is not inconsistent with Supreme Court precedent, including <u>Strickland</u> and its progeny. The state court's adjudication of this ground is not contrary to or an unreasonable application of <u>Strickland</u> or based on an unreasonable determination of the facts. Thus, ground fourteen is due to be denied.

Accordingly, it is now

**ORDERED AND ADJUDGED:**

1. The Petition for Writ of Habeas Corpus (Doc. 1) is **DENIED**.

2. This action is **DISMISSED WITH PREJUDICE**.

3. The **Clerk** shall enter judgment accordingly and close this case.

4.  If Petitioner appeals the denial of his Petition for Writ of Habeas Corpus (Doc. 1), **the Court denies a certificate of appealability**.[8]  Because this Court has determined that a certificate of appealability is not warranted, the **Clerk** shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case.  Such termination shall serve as a denial of the motion.

**DONE AND ORDERED** at Jacksonville, Florida, this 10th day of April, 2020.

_____

**BRIAN J. DAVIS**
**United States District Judge**

sa 4/6
c:
Steven Willie Montgomery
Counsel of Record

---

[8] This Court should issue a certificate of appealability only if a petitioner makes "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).  Upon due consideration, this Court will deny a certificate of appealability.